McDONALD, J.,
dissenting:
hi respectfully dissent from the majority in this matter. The issue presented in this appeal is whether a UM waiver form signed by a legal representative of the named insured is “properly completed” by the “legal representative” of the “named insured” if the signature does not include the representative capacity of the signatory (or if the face of the form does not have an affirmative statement indicating that the signatory is signing on behalf of the named insured). The report concludes that a signature/form lacking such designation creates uncertainty on the face of the UM waiver form and is not a valid waiver of UM coverage in the amount of the policy’s bodily injury limits. I disagree with this conclusion.
La. R.S. 22:680 does not set out the manner in which a legal representative must perfect his signature. The latest Supreme Court decision concerning what constitutes a “properly completed and signed form” pursuant to La. R.S. 22:680 is Duncan. In determining what is required under the statute to constitute a “properly completed and signed” form, Duncan examined the prescribed form and determined that the blanks on the form entail six tasks, all of which are pertinent to a valid UM waiver. In essence, the Supreme Court concluded that the statute requires the completion of all six tasks in order for an insurer to be entitled to the rebuttable presumption provided in La. R.S. 22:680(l)(a)(ii).
| gThe specific task examined in Duncan was “filling in the policy number” and Duncan held “the failure to fill in the policy number on the form prescribed by the commissioner of insurance invalidates the UM waiver.” Duncan’s holding does not address the task at issue here — “printing the name of the named insured or legal representative” and “signing the name of the named insured or legal representative”. However, the Supreme Court provided some discussion on the relevance of the six tasks in the context of how completing these tasks establishes evidence of a knowing waiver of UM coverage. This dicta provides guidance in this matter. The Supreme Court stated:
The commissioner of insurance, in drafting the form, requires six tasks, all of which we find to be pertinent in rejecting UM coverage. The insured initials the selection or rejection chosen to indicate that the decision was made by the insured. If lower limits are selected, then the lower limits are entered on the form to denote the exact limits. The insured or legal representative signs the form evidencing the intent to waiver UM coverage and includes his or her printed name to identify the signature. Moreover, the insured dates the form to determine the effective date of the UM waiver. Likewise, the form includes the policy number to demonstrate which policy it refers to. Thus, the policy number is relevant to determination of whether the insured waived UM coverage for the particular policy at issue.
In exercising his authority under La. R.S. 22:680 to prescribe the UM waiver form, the Commissioner included a notice immediately above the signature, policy number, printed name of signatory and date lines. The notice states “[t]he choice I made by my initials on this form will apply to all persons insured under my policy”. By signing the form, printing his name, filling in the policy number and *889 dating the waiver form, a signatory— whether it is the named insured or its/his legal representative — clearly indicates that he intends for the selection he initialed to apply to the policy identified by the policy number. Had the Commissioner determined that to effectuate a valid UM waiver the insured’s legal representative must include |3a designation that the signature was made in a representative capacity, the Commissioner would have included that requirement as an additional task on the prescribed form. The Commissioner did not do so. The only additional task the Supreme Court identified that the Commissioner requires from the signatory, in the signature portion of the waiver form, is for the signatory to print his name, date the form, and to include the number of the policy. By submitting a UM waiver form that addressed each required task, Dixieland met its burden and established that it is entitled to the rebuttable presumption “that the insured knowingly ... selected a lower limit”.
The facts in this case clearly demonstrate the inequity resulting from legislation that allows a commercial bus tour company, such as Dixieland, that services many guest passengers during a trip, to have a commercial automobile policy with a limit of $5,000,000.00 per accident in bodily injury liability coverage, but to select only $50,000.00 in UM coverage. However, the Legislature has enacted legislation that allows an insured to do so. The report attempts to fix this legislatively created inequity by imposing a task on the signatory that is not required by the Legislature, the Commissioner, or the Supreme Court.
The record before the court reveals that National Interstate submitted a UM waiver, prescribed by the Commissioner of Insurance, that addresses each of the six required tasks identified in Duncan. Accordingly, National Interstate is entitled to a rebuttable presumption that Dixieland knowingly selected lower limits. The defendants did not produce any evidence that Norman Augusta was not the legal representative of Dixieland, that the policy number shown on the UM waiver is not for the policy at issue in this matter, or that the UM waiver was altered or modified after Norman Augusta completed it. In addition to establishing that it was entitled to the rebuttable | .^resumption, National Interstate also submitted the affidavit of Norman Augusta, attesting to his position as Dixieland’s Chief Executive Officer and Chairman since 1995 and that he completed the blanks on the UM waiver form. Mr. Augusta states that it was his intention to do exactly what he did when he completed the waiver form. He intended to choose a lower limit of $50,000.00 in UM coverage and that is what he did. There is no dispute over his intentions in this regard. Thus, National Interstate has shown that there are no genuine issues of material fact that Dixieland rejected UM coverage in the amount of the policy limits for bodily injury liability coverage and selected lower limits for UM coverage, and that it is entitled to summary judgment as a matter of law.
For these reasons I respectfully dissent and would affirm the judgment of the trial court.